[Civ. No. 7593.   Third Dist.   Apr. 14, 1949.]

FRANK X. SHINN, Appellant, v. CYRIL H. HEUSNER, Respondent.

Russell F. Milham, Thos. S. Marlor and Peter Mannino for Appellant.

Henry & Bedeau and Sherman C. Wilke for Respondent.

ADAMS, P. J.—This is an appeal from a judgment in an election contest case. Respondent Heusner, who was the incumbent supervisor of the third supervisorial district in El Dorado County, was opposed for reelection by appellant Shinn at an election held June 1, 1948. The final count gave Heusner 431 votes, including 32 by absentee ballots, and gave Shinn 425 votes, including four by absentee ballots. The contestant contends that certain of the absentee ballots should not have been counted, and that if same were eliminated he would be the winner by 22 votes. ▆ He also appears by his briefs to be attacking the moral qualifications of Heusner to be a supervisor, urging that the latter violated provisions of the election laws and the Government Code, and for that reason should be "forever disqualified from holding office in this state" and "forever disqualified from exercising the right of franchise."

We think that appellant has gone outside of the issues which are presented or presentable on this contest. Section 8511 of the Elections Code prescribes the causes for which an election contest such as this may be instituted as follows:

"(a) That the precinct board or any member thereof was guilty of malconduct.

"(b) That the person who has been declared elected to an office was not, at the time of the election, eligible to that office.

"(c) That the defendant has given to any elector or inspector, Judge, or clerk of the election, any bribe or reward, or has offered any bribe or reward for the purpose of procuring his election, or has committed any other offense against the elective franchise defined in Chapter 3, Division VII or Division XIV, of this code.

"(d) That illegal votes were cast.

"(e) That the precinct board in conducting the election or in canvassing the returns, made errors sufficient to change the result of the election as to any person who has been declared elected."

No malconduct of the precinct board or any member thereof under subdivision (a), or errors of the precinct board under subdivision (e), are relied upon on this appeal; and if contestant relies upon subdivision (b) there was no showing that Heusner was, at the time of the election, "ineligible" to the office of supervisor. █ "Ineligible" as used in such statute means, we think, lacking in legal qualifications; and there is no evidence in the case that respondent lacked legal qualifications such as are prescribed for supervisors by Political Code, section 4028, or by any other statutory provision. See *Ward* v. *Crowell*, 142 Cal. 587, 588 [76 P. 491] ; also cases cited in 14 Words and Phrases (Perm. ed.) 233 et seq.

█ Appellant does contend, however, that, while Heusner defends on the ground that he was a deputy county clerk and acted in pursuance of his duties as such in connection with the contested absentee ballots, the office of supervisor is incompatible with the office of deputy county clerk, and therefore respondent's office as supervisor became vacant when he accepted appointment as deputy county clerk (citing *People* v. *Garrett,* 72 Cal.App. 452, syl. 3 [237 P. 829]).

Whether the two offices are incompatible need not be decided, first, because the point was not raised in the lower court; and second, even if the offices were incompatible the result would have been that by becoming a deputy county clerk respondent ceased to be a supervisor. We are unable to see that such result would have any bearing upon the validity of the absentee ballots, which contestant contends should be disregarded in this case. By accepting appointment to an incompatible office the most that would have been effected was Heusner's tenure at that time and not his right to future tenure as supervisor, for, by the same reasoning, in accepting the new term as supervisor he would vacate the office of deputy county clerk.

■ While the prayer of plaintiff's complaint is that the court annul the absentee ballots submitted by Heusner, that the latter be debarred from holding public office, and that plaintiff be declared elected, if the real purpose of the action is to secure the position for plaintiff, the debarring of respondent would not have the effect of entitling plaintiff to such office unless enough absentee ballots were annulled that it could be said that contestant received the majority of the votes cast. See *Bush* v. *Head,* 154 Cal. 277, 284 [97 P. 512] ; *People* v. *Rodgers,* 118 Cal. 393, 396 [46 P. 740, 50 P. 668] ; *Campbell* v. *Free,* 7 Cal.App. 151, 153 [93 P. 1060] ; *Budway* v. *Hollibaugh,* 68 Cal.App.2d 473, 476 [157 P.2d 30].

As for subdivision (c) of section 8511 of the Elections Code, it is not contended that respondent gave or offered any bribe or reward for procuring his election. Appellant does argue before this court that prior to the election Heusner violated a number of the provisions of the Elections Code, to wit: that he procured from the county clerk applications for absentee voters' ballots and the ballots, simultaneously, without giving receipts therefor, and that applications were signed in blank by prospective electors; that he violated the elections laws in that he saw how certain people voted such absentee ballots; that he, instead of the voters, folded the ballots in many instances, enclosed them in identification envelopes, and himself sealed the envelopes; and that he swore to a false affidavit on such envelopes in contravention of section 5911 of the Elections Code; that he requested electors to vote absentee ballots, and violated the Elections Code in that no person had ever requested an application for an absent voter's ballot; that with the connivance of the county clerk he went to the home of one elector who had properly requested such a ballot, and "voted this elector"; and that he violated all of the provisions of section 5930 of the Elections Code, and particularly subdivisions (a) and (b) thereof.

■ But the above cited code sections apply to voters, and are directions to them as to how they are to proceed in making use of absentee ballots, and do not define offenses against the elective franchise defined by the portions of the Elections Code set forth in chapter 3, division VII or division XIV of such code, which are chargeable against respondent.

■ The gravamen of appellant's complaint is that illegal votes were cast, that is, certain absentee ballots. However, the findings of the trial court negative the charges relied upon. Appellant merely recites portions of the testimony and relies

thereon as grounds for reversal of the judgment of the trial court. But, assuming that there are conflicts, the determination of questions of fact was for the trial court. There is no contention that there is insufficient evidence to support its findings, and such being the case it is not incumbent upon this court to review it.

The trial judge rendered an opinion in which he stated the principle set forth in *Rideout* v. *City of Los Angeles,* 185 Cal 426 [197 P. 74]—that it is the duty of the court to validate an election if possible, and that it must be held valid unless plainly illegal. He then said that from a careful review of the evidence it could not be said that any of the 36 voting absentee voters were not duly registered; that he could find no warrant for making any finding that any of such voters was lacking in qualifications as an elector, or was lacking with regard to due registration, or that there was substantial departure from the prescribed voting procedure diminishing the result declared, or affecting or violating the secrecy or integrity of the ballots cast; that evidently, for the purpose of getting out the vote, registration deputies were made use of; and that a candidate for office was not regarded as unsuitable for rendering service to the county clerk in the delivery of blank application forms, in receiving applications for absentee ballots, in delivering ballots in response thereto, and in the reception from the voters of their voted identification envelopes and the return of same to the county clerk's office, all of which duties Heusner evidently performed as one authorized so to do. He concluded by saying:

"The evidence in the case has been carefully reviewed and scrutinized to determine if any of the facts relied on as a cause for complaint could be fairly held to affect the result declared by the canvassing board, or could be held as a fact sufficient to impeach the integrity of the absentee votes cast at the election had; and the Court is of the opinion that none has been shown of such invalidating nature, and the Court is further of the opinion that the votes attacked were legally cast by the voters, and that to disregard or reject them would be, without warrant, to disfranchise these voters.

"And it appears from the result found and declared that the contestee received the majority of the votes cast in the June election in the Third Supervisorial District for Supervisor, such finding will have to be confirmed, as required by the Statute, none of the attacks made by the contestant having been sustained."

The findings are in accord with the above statement, and negative the allegations of plaintiff's complaint and the asserted facts relied upon by appellant upon whom rested the burden of proof. (*Coghlan* v. *Alpers,* 140 Cal. 648, 653 [74 P. 145].)

Chapter 5 of division 8 of the Elections Code is entitled "Absent Voting," and section 5881, the first section in that chapter, reads: "This chapter shall be liberally construed in favor of the absent voter."

In view of the above provision and the findings of the trial court, there appears no reason why this court should interfere with the judgment below.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.